2021 MAR 8 AM 10:03
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TEENA G., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Acting Commissioner of Social Security, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br><br> Case No. 2:20-cv-00039-DAO <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Teena G.[1] filed this action asking the court to remand the Acting Commissioner of Social Security's ("Commissioner") decision denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385. (*See* Pl.'s Opening Br. 1–2, Doc. No. 24.) The Administrative Law Judge ("ALJ") determined Ms. G. did not qualify as disabled. (Certified Tr. of Admin. R. (hereafter "Tr. __") 25–26, Doc. Nos. 12–13, 15.) After careful review of the entire record and the parties' briefs,[2] the court[3] REVERSES and REMANDS the Commissioner's decision for the reasons set forth below.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court will refer to the Plaintiff only by the first name and last initial identified in her Complaint: Teena G. (Compl. 1, Doc. No. 3.)

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court concludes it does not need oral argument and will determine the appeal on the basis of the written memoranda.

[3] The parties consent to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. No. 17.)

STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner of the Social Security Administration. This court reviews the ALJ's decision to determine whether the record contains substantial evidence in support of the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

The ALJ's factual findings will stand if supported by substantial evidence. 42 U.S.C. § 405(g). The substantial evidence standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence or if there is a mere scintilla of evidence supporting it." *Id.* (internal quotation marks omitted). Rather than mechanically accepting the ALJ's findings, the court will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being

supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition, the court reviews whether the ALJ applied the correct legal standards. The court may reverse where the ALJ fails to do so. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) ("[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis."). Sufficient grounds for reversal also arise where the ALJ fails "to provide this court with a sufficient basis to determine that appropriate legal principals have been followed." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (citation omitted).

## APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-part sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant presently engages in substantial gainful activity;

2) The claimant has a medically severe physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

4) The claimant possesses a residual functional capacity to perform his or her past work; and

5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

See 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).  The claimant has the burden, in the first four steps, of establishing the disability.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.  *Id.*

## PROCEDURAL HISTORY

Ms. G. applied for supplemental security income (SSI) in October of 2016.  (Tr. 307.)  She initially claimed she became disabled in 1998.  (Tr. 307.)  However, she later amended her alleged onset date to her protective filing date of October 20, 2016, (Tr. 333), and the ALJ considered whether she was disabled on or after this date, (Tr. 26, 173).  After an administrative hearing, (Tr. 94–134), the ALJ issued an unfavorable decision on January 16, 2019, finding Ms. G. was not disabled, (Tr. 173–181).  Ms. G. appealed the decision, and the Appeals Council remanded for additional proceedings.  (Tr. 187–90.)  After a second administrative hearing (Tr. 65–93), the ALJ again found Ms. G. not disabled and denied her claim for SSI on October 3, 2019, (Tr. 12–26).

In his second decision, the ALJ found Ms. G. had the following severe impairments: right shoulder arthropathy, major depressive disorder, bipolar disorder, anxiety disorder, and posttraumatic stress disorder (PTSD). (Tr. 16.) The ALJ found Ms. G.'s impairments did not meet or equal a listing. (Tr. 17.) The ALJ determined Ms. G. had the residual functional capacity to perform light work with the following limitations:

> She should never push and/or pull with her dominant right upper extremity. She should never crawl or climb ladders, ropes or scaffolds. She can never reach with her right upper extremity. She must avoid even moderate exposure to hazards. She is limited to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions, few workplace changes, no interaction with the public, and only occasional and brief interactions with co-workers and supervisors.

(Tr. 18.) The ALJ determined she was unable to perform any past work. (Tr. 23.) However, considering her age, education, work experience, and residual functional capacity, the ALJ found she could perform other jobs in the national economy. (Tr. 24.) Therefore, the ALJ concluded she was not disabled. (Tr. 25–26.) Ms. G. appealed the decision to the Appeals Council, which denied review, (Tr. 1–4).

Ms. G.'s October 2016 application was her third application for disability benefits. Ms. G. previously submitted two applications for disability insurance benefits (DIB) under Title II, which were both denied. Her first DIB claim was denied in October 2013. (*See* Tr. 368.) Her second DIB claim was denied in April 2017. (*See* Tr. 158.) The second denial only considered whether Ms. G. was disabled through June 30, 2014. (Tr. 158, 333.)

ANALYSIS

Ms. G. contends the ALJ (1) erred by failing to consider evidence from her prior social security applications and omitting her prior claim files from the administrative record, and (2)

5

erred in his evaluation of the medical opinions of Dr. Scribner, Dr. Qutub, Mr. Child, and Mr. Wright.[4] (Pl.'s Opening Br. 14–18, 20–25, Doc. No. 24.)

### A. Evidence from Prior Social Security Applications

Ms. G. contends the ALJ was required to consider evidence from her prior social security applications to fully adjudicate her current claim. (Pl.'s Opening Br. 14-18, Doc. No. 24.) She also contends the evidence from the prior claim file was improperly omitted from the administrative record for this case. (*Id.* at 16–18.) Plaintiff cites the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX)[5] in support of her arguments.

As relevant here, the HALLEX provides that an ALJ is required to consider evidence in a prior claim file when the pending claim involves a collateral estoppel issue. HALLEX I-2-1-13, https://www.ssa.gov/OP_Home/hallex/hallex-I.html. This may occur if a prior decision under a different title addressed a time period which overlaps with the current application. *Id.*; *see also* HALLEX I-2-2-30. Even if not required, the HALLEX also provides the ALJ may consider evidence from a prior claim file when "necessary for a full adjudication of the issues before the ALJ." HALLEX I-2-1-13. This generally occurs when the ALJ determines "[t]here is a need to establish a longitudinal medical, educational, or vocational history; or [t]he impairment is of a nature that evidence from a prior claim(s) file could make a difference in establishing whether

---

[4] In her Opening Brief, Ms. G. contends the ALJ also erred by (1) failing to discuss Listing 12.05(C); (2) failing to consider a Global Assessment Functioning score from 2009; and (3) declining to obtain supplemental testimony from a vocational expert at the second hearing. (Pl.'s Opening Br. 18–20, 24–25, Doc. No. 24.) However, Ms. G. withdraws these contentions of error in her reply. (Pl.'s Reply Br. 3 n.6, Doc. No. 27.) Accordingly, the court does not address them.

[5] The HALLEX is "a set of internal guidelines for processing and adjudicating claims under the Social Security Act." *Social Sec. Law Center, LLC v. Colvin*, 542 F. App'x 720, 722 n.3 (10th Cir. 2013) (unpublished).

disability is present in the current claim." *Id.* "Any information on which the ALJ relies from a prior claim(s) file will be added to the record . . . and will be made available to the claimant and appointed representative, if any, for review."  HALLEX I-2-1-13.  However, "[a]n ALJ does not have an obligation to provide a claimant an opportunity to review a prior claim(s) file if the ALJ does not rely on any information from the prior claim(s) file." *Id.*

In his review of Ms. G.'s third application for benefits, the ALJ considered whether Ms. G. was disabled beginning on October 20, 2016.  (Tr. 26.)  Although the decision on Ms. G.'s second application for DIB benefits was issued after this date, in April 2017, that prior decision considered only whether Ms. G. was disabled through June 30, 2014.  (Tr. 158, 333.)  Thus, there was no overlap between the time period at issue in the prior decision and the time period at issue in the present case.  Accordingly, no collateral estoppel issue was involved, and the ALJ in this case was not required to consider evidence from the prior claim file.[6]

Nevertheless, Ms. G. asserts evidence from her prior claims was necessary to fully adjudicate her claim because (1) she initially claimed her disability began in 1998, (2) there was a need to establish a longitudinal record connected to her 2011 shoulder injury, and (3) the prior DIB decision found she was capable of only sedentary work rather than light work.  (Pl.'s Opening Br. 16–17, Doc. No. 24.)  However, as set forth above, Ms. G. amended her alleged onset date to October 20, 2016; therefore, the ALJ in this case was not bound by the residual functional capacity findings in the prior decision covering an earlier time period.  Moreover, the record contains evidence of Ms. G.'s longitudinal history from before the alleged onset date,

---

[6] Ms. G. argues the ALJ would have been required to consider the prior decision under the doctrine of collateral estoppel if her attorney had not amended the alleged onset date to October 20, 2016.  (Pl.'s Opening Br. 14–15, Doc. No. 24.)  This hypothetical scenario is irrelevant since her attorney did, in fact, amend the alleged onset date.  (Tr. 333.)

7

including medical records of symptoms and treatment related to her shoulder injury which the ALJ considered in his decision. (*See* Tr. 20, 734–40, 967–70, 979-82.) Because the record for the current claim contained sufficient evidence of Ms. G.'s longitudinal history for the ALJ to render a decision as to the time period at issue, the evidence from prior claim files was not necessary to fully adjudicate her claim.

Finally, Ms. G. asserts the ALJ *did* rely on evidence from the prior claim file in his decision and, therefore, was required to add it to the record for this case. (Pl.'s Opening Br. 16–18, Doc. No. 24.) In support of her assertion, Ms. G. provides only one example: the ALJ's statement that a 2013 evaluation by a medical provider, Dr. Scribner, was made "in connection with the claimant's 2017 Title II unfavorable determination (Ex. 20F in prior file)." (Tr. 21.) However, the same 2013 evaluation also appeared in the current claim file before the ALJ, which the ALJ cited. (Tr. 21, 878–79.) Thus, the ALJ was not relying on evidence exclusively found in a prior file and absent from the current claim record. Where the same evidence was already part of the current claim record, the ALJ was not required to add duplicative evidence from the prior claim file to the record.

For these reasons, the ALJ did not err in failing to consider evidence from Ms. G.'s prior claims or in omitting the prior claim files from the record.

### B. Evaluation of Opinion Evidence

Ms. G. next contends the ALJ erred in his evaluation of opinions from her treating psychiatrist, Dr. Scribner; the consultative examiner, Dr. Qutub; and her therapists, Mr. Child and Mr. Wright. (Pl.'s Opening Br. 14–18, 20–25, Doc. No. 24.)

1. Dr. Scribner

Ms. G. argues the ALJ failed to adequately consider the medical opinions of her treating psychiatrist, Dr. Scribner. (Pl.'s Opening Br. 20–21, Doc. No. 24.)

The ALJ must give a treating physician's medical opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." [7] 20 C.F.R. § 416.927(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). While an express finding with respect to this first question was previously considered mandatory, the Tenth Circuit has more recently declined to remand where it could determine from the ALJ's decision that it "implicitly declined to give the opinion controlling weight." *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

If the ALJ does not give a treating source opinion controlling weight, the ALJ must consider the level of deference to give it, using the factors in 20 C.F.R. § 416.927(c). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted). The ALJ's decision need not "apply expressly each of the six relevant factors in deciding what weight to give a medical

---

[7] The Social Security Administration revised 20 C.F.R. § 416.927 regarding the evaluation of treating physician opinions for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at *5844–45. Ms. G. filed her SSI application in October 2016, (Tr. 307), so the court applies the rules and regulations in place prior to the March 27, 2017 rule change. *See* 20 C.F.R. § 416.927.

opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ must "give good reasons in the notice of determination or opinion for the weight that is given the treating physician's opinion." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.927(c)(2). The court may not supply possible reasons for giving less weight to or rejecting the treating physician's opinions but may only evaluate the ALJ's decision on her stated reasons. *Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004).

Dr. Scribner provided a September 2013 medical source statement regarding Ms. G.'s ability to do work-related mental activities. (Tr. 878–79.) He indicated Mr. G. had "marked" limitations in her ability to do five of the six listed activities, including carrying out simple instructions and making judgments on simple work-related decision. (Tr. 878.) Dr. Scribner also opined in January 2014 that Ms. G. was "essentially homebound with anxiety." (Tr. 876–77.)

The ALJ's decision addressed only Dr. Scribner's 2013 opinion regarding work-related mental activities. The ALJ noted this opinion was made in connection with Ms. G.'s prior unsuccessful Title II claim. (Tr. 21.) He explained he gave this opinion "little weight" because it was dated more than three years before the alleged onset date, and because the period of adjudication began with the protective filing date of October 20, 2016. (Tr. 21.)

Ms. G. argues the ALJ's stated reasons for discounting the opinion were inconsistent with Tenth Circuit law, citing *Hamlin v. Barnhart*, 365 F.3d 1208 (10th Cir. 2004). In *Hamlin*, the Tenth Circuit held that "even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's

10

observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ." *Id.* at 1215.

Ms. G. correctly asserts that the ALJ failed to provide adequate justification for discounting Dr. Scribner's opinion regarding work-related mental activities. The ALJ's only rationale for discounting this opinion was the fact that it was made before the adjudication period and in connection with a prior claim. (Tr. 21.) But under *Hamlin*, this, alone, does not justify an ALJ's failure to consider a treating physician's opinion. 365 F.3d at 1215. Rather than addressing the factors set forth in 20 C.F.R. § 416.927 for determining the level of weight to provide a treating source opinion, the ALJ relied solely on justifications which are inadequate under *Hamlin*. Although the ALJ is not required to expressly apply each factor from 20 C.F.R. § 416.927(c), he neglected to employ the correct legal standards in evaluating Dr. Scribner's opinion. In sum, the ALJ failed to articulate good reasons for his decision to give Dr. Scribner's opinion little weight.

Additionally, the ALJ failed to address Dr. Scribner's opinion that Ms. G. was homebound with anxiety. (*See* Tr. 876–77.) Notably, the Appeals Council's remand order specifically directed the ALJ to consider and weigh Dr. Scribner's opinions, mentioning both his opinion regarding work-related activities and his opinion that Ms. G. was homebound with anxiety. (Tr. 188.) Although the ALJ acknowledged this directive, (Tr. 13), the portion of his decision discussing Dr. Scribner contains no evaluation of Dr. Scribner's opinion that Ms. G. was homebound with anxiety, (*see* Tr. 21).

The Commissioner cites *Arterberry v. Berryhill*, 743 F. App'x 227 (10th Cir. 2018) (unpublished), for the proposition that an ALJ is not required "to discuss the opinions of a consultative examiner from a prior disability proceeding—one that may have involved different

medical issues and evidence, and that resulted in a denial of benefits." *Id.* at 230. However, the cited passage addresses opinions of a consultative examiner, not a treating physician such as Dr. Scribner. As set forth above, *Hamlin* requires an ALJ to consider opinions of treating physicians even if they date from an earlier, previously adjudicated period. 365 F.3d at 1215. The ALJ failed to do so here.

Because the ALJ did not apply the correct legal standards for evaluating Dr. Scribner's opinions and failed to articulate good reasons for discounting the opinions, the court remands the case for further consideration.

2. <u>Dr. Qutub</u>

Ms. G. argues the ALJ erred in rejecting portions of the opinion of Dr. Qutub, the consultative examiner. (Pl.'s Opening Br. 22–23, Doc. No. 24.)

An ALJ must evaluate medical opinions of a non-treating source using the factors set forth in 20 C.F.R. § 416.927(c). These factors include whether the opinion is supported by relevant evidence and explanations, and whether it is consistent with the record as a whole. *Id.* § 416.927(c)(3)–(4). "The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." *Id.* § 416.927(c)(3).

After examining Ms. G., Dr. Qutub opined she could reach, push, and pull occasionally with her right hand and frequently with her left hand. (Tr. 601.) He also opined she could frequently use both hands for grasping, handling, fingering, or feeling. (Tr. 601.)

The ALJ gave partial weight to Dr. Qutub's opinion. (Tr. 21.) The ALJ found "the right upper extremity limitations he assessed are fairly consistent with the consultative examination and medical evidence of record overall." (Tr. 21.) However, he stated "Dr. Qutub does not explain[] the left upper extremity limitations and bilateral manipulative limitations and these

12

limitations are not supported by Dr. Qutub's examination or by the medical evidence of record overall." (Tr. 21.) The ALJ did not include any limitations related to Ms. G.'s left arm or manipulative abilities in his residual functional capacity assessment. (Tr. 18.)

Ms. G. argues the ALJ's evaluation was erroneous because he did not cite "any specific authority" for rejecting portions of Dr. Qutub's opinion. (Pl.'s Opening Br. 22–23, Doc. No. 24.) However, the ALJ explained these limitations were unsupported by Dr. Qutub's own examination and the medical record as a whole, applying the factors set forth in 20 C.F.R. § 416.927(c). (Tr. 21.) Ms. G. does not explain why these findings were erroneous, and she fails to identify any evidence in the record which would support the portions of Dr. Qutub's opinion the ALJ rejected. A review of the record confirms that, consistent with the ALJ's findings, Dr. Qutub's examination report does not explain the basis for the left arm and manipulative limitations or reference any evidence supporting such limitations. (*See* Tr. 594–601.) Thus, the ALJ properly evaluated Dr. Qutub's opinion using the factors set forth in 20 C.F.R. § 416.927(c), and his decision to give the opinion partial weight is supported by substantial evidence. For these reasons, the ALJ did not err in his evaluation of Dr. Qutub's opinion.

Ms. G. also argues the ALJ was required to seek additional evidence from Dr. Qutub because there was conflict or ambiguity in the record and the report did not contain all the necessary information. (Pl.'s Opening Br. 23, Doc. No. 24.) However, under the current regulations in effect at the time of the ALJ's decision, the decision to recontact a medical source is discretionary, not mandatory. *See* 20 C.F.R. § 416.920b(b)(2)(i). Accordingly, the ALJ did not err in failing to recontact Dr. Qutub.

3. <u>Mr. Child and Mr. Wright</u>

Ms. G. argues the ALJ erred in rejecting the opinions of Mr. Child and Mr. Wright, her therapists, regarding her ability to work and retain employment. (Pl.'s Opening Br. 23–24, Doc. No. 24.) She appears to suggest the ALJ improperly treated their opinions as addressing issues reserved to the Commissioner. (*Id.*)

The Commissioner (through the ALJ) is responsible for making the determination about whether the claimant meets the statutory definition of disability. 20 C.F.R. § 416.927(d)(1). Thus, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean" the claimant will be found disabled. *Id.* Although the ALJ will consider opinions from medical sources on certain issues, including a claimant's residual functional capacity, the "the final responsibility for deciding these issues is reserved to the Commissioner." *Id.* § 416.927(d)(2). The ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* § 416.927(d)(3).

Mr. Child is a clinical mental health counselor (CMHC), and Mr. Wright is a licensed clinical social worker (LCSW). (*See* Tr. 21–22.) As such, they are not considered "acceptable medical sources" under the Social Security Administration's regulations, and they could not provide medical opinions. *See* 20 C.F.R. § 416.902(a) (defining "acceptable medical source"); *Id.* § 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources . . . ."); *Branum v. Barnhart*, 385 F.3d 1268, 1272 (10th Cir. 2004) (noting a therapist who is not a medical doctor is not an acceptable medical source). Nevertheless, their opinions "may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources," and the ALJ uses the same factors to determine the weight to be given to their opinions. 20 C.F.R. § 416.927(f)(1). "In the case of a nonacceptable medical

14

source . . . , the ALJ's decision is sufficient if it permits [the court] to follow the adjudicator's reasoning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.927(f)(2).

        a.      Mr. Child

Mr. Child opined in October 2017 that Ms. G.'s symptoms would interfere with her ability to retain employment if she became employed. (Tr. 778.) He also opined that she had "extreme" limitations in social functioning and in her ability to maintain concentration, persistence, and pace, and that she would be likely to miss work more than four times per month. (Tr. 779–80.) He noted she would leave her house only once or twice a month, did not feel safe leaving her house since she had been kidnapped, struggled being around others, and needed help getting in the shower, getting dressed, and getting out of bed. (Tr. 778–79.)

The ALJ gave Mr. Child's opinion that Ms. G. was unable to work "no weight" because it concerned an issue reserved to the Commissioner. (Tr. 22.) He noted Mr. Child was not an acceptable medical source and gave "partial weight" to Mr. Child's opinions regarding Ms. G.'s limitations. (Tr. 22.) He found Mr. Child's opinions "do not align with the medical evidence of record, and visits with other medical providers and evaluators . . . did not note abnormal psychological signs supporting the notion that the claimant is housebound due to her anxiety symptoms," citing Dr. Qutub's evaluation and records from a spinal rehab center. (Tr. 22, 589–601, 718–733.) Finally, the ALJ noted Mr. Child saw Ms. G. only three times between July and October 2017. (Tr. 22.)

The ALJ did not err in giving no weight to Mr. Child's opinion on the ultimate issue of whether Ms. G. was able to work, since that issue is reserved to the Commissioner. However, the ALJ failed to provide adequate justification for his finding that Mr. Child's other opinions

15

did not align with medical evidence of record. Neither Dr. Qutub's evaluation nor the records from the spinal rehab center address the limitations in mental functioning which are the subject of Mr. Child's opinions. (*See* Tr. 589–601, 718–733.) Dr. Qutub's functional assessment addressed physical limitations,[8] and the spinal rehab records reflect treatment for physical symptoms. (Tr. 589–601, 718–733.) It is unclear what aspect of these records the ALJ considered inconsistent with Mr. Child's opinions. Because the evidence cited by the ALJ does not appear to address the same issue, the explanation given is insufficient to allow the court to follow the ALJ's reasoning. And although the ALJ accurately noted Mr. Child had treated Ms. G. on only three occasions, the ALJ did not cite contradictory evidence from any other source with a longer treatment relationship.

Moreover, the record contains other medical evidence supporting Mr. Child's opinions, including Dr. Scribner's medical opinions that Ms. G. had "marked" limitations in work-related mental activities and was homebound with anxiety. (*See* Tr. 876–79.) Indeed, in remanding the case for further consideration of Dr. Scribner's opinions, the Appeals Council noted these appeared to support Mr. Child's opinions. (Tr. 188.) However, as set forth above, the ALJ failed to properly consider Dr. Scribner's opinions upon remand.

The ALJ's explanation of the weight given to Mr. Child's opinions was insufficient. Accordingly, the court remands for further consideration of Mr. Child's opinions.

---

[8] In his Answer Brief, the Commissioner notes Dr. Qutub observed Ms. G. was pleasant, cooperative, and alert during the exam and her attention and concentration appeared appropriate for the exam. (Def.'s Answer Br. 20, Doc. No. 26 (citing Tr. 596, 599–600).) However, the evaluation does not include a functional assessment of mental limitations. (*See* Tr. 600–01.)

b. *Mr. Wright*

Mr. Wright opined in January 2018 that Ms. G.'s symptoms would interfere with her ability to retain employment and stated she did not "appear to be able to work/maintain employment." (Tr. 786–88.) He opined she had "marked" or "extreme" limitations in her ability to perform activities of daily living, maintain social functioning, and maintain concentration, persistence, or pace. (Tr. 786–87.) He indicated she would be likely to miss work more than four times per month due to psychological symptoms. (Tr. 787.) Mr. Wright also opined in November 2018 that Ms. G.'s PTSD, bipolar disorder, and panic disorder "severely impair [her] ability to function in social, occupational, and other important areas of her life," and that she was not capable of working either full or part time. (Tr. 955, 958.)

The ALJ gave Mr. Wright's opinions regarding Ms. G.'s ability to work no weight because that issue is reserved to the Commissioner. (Tr. 22.) The ALJ noted Mr. Wright was not an acceptable medical source. (Tr. 22.) The ALJ gave Mr. Wright's January 2018 opinion partial weight because it was "based on a one-hour initial visit and review of prior assessments." (Tr. 22.) The ALJ further explained that "[a]s with Mr. [Child's] opinion . . . , the medical evidence of record, including a recent mental status examination, is inconsistent with the degree of limitation Mr. Wright assesses." (Tr. 22.)

Again, the ALJ did not err in giving no weight to Mr. Wright's opinions on the ultimate issue of whether Ms. G. was able to work, but he failed to provide adequate justification for his finding that Mr. Wright's other opinions did not align with medical evidence of record. As set forth above, the evidence cited by the ALJ in his discussion of Mr. Child's opinions does not appear to address Ms. G.'s work-related mental limitations. (*See* Tr. 589–601, 718–733.) The recent mental status examination referenced by the ALJ was part of Mr. Wright's November

17

2018 evaluation in which he opined she was unable to work. (Tr. 955–59.) Mr. Wright observed Ms. G. was "depressed and flat"; her thoughts appeared to be logical, linear and flowing; she was oriented, cooperative and forthcoming; she had a lot of difficulty with concentration; her cognitive functioning was below average, and she had "fair" insight and judgment. (Tr. 958.) The ALJ did not explain what aspect of this exam was inconsistent with Mr. Wright's opinions. Although it contained some positive observations, the exam as a whole does not appear to directly contradict Mr. Wright's assessment of Ms. G.'s limitations. Indeed, elsewhere in the same evaluation, Mr. Wright indicated Ms. G.'s diagnoses continued to "severely impair [her] ability to function"—an opinion the ALJ did not address in his decision. (Tr. 955.) In the absence of other medical evidence in the record inconsistent with Mr. Wright's opinions, this exam alone does not provide substantial evidence supporting the ALJ's determination. Finally, as noted above, the ALJ failed to properly consider Dr. Scribner's opinions which appear to support Mr. Wright's assessment of Ms. G.'s limitations.

Because the ALJ's explanation of the weight given to Mr. Wright's opinions was insufficient, the court remands for further consideration of these opinions.

## CONCLUSION

For the foregoing reasons, the court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings, including further consideration of the

opinions of Dr. Scribner, Mr. Child, and Mr. Wright, and any resulting implications on Ms. G.'s residual functional capacity.

DATED this 8th day of March, 2021.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

.